**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| INTERNATIONAL GAME TECHNOLOGY, et al., | Case No. 2:16-cv-02792-APG-NJK |
| Plaintiff(s), | ORDER |
| v. | (Docket No. 32) |
| ILLINOIS NATIONAL INSURANCE CO., | |
| Defendant(s). | |

Pending before the Court is Plaintiffs' motion to compel production of documents and deposition testimony. Docket No. 32. Defendant filed a response in opposition. Docket No. 36. Plaintiffs filed a reply. Docket No. 37. Plaintiffs ask the Court to compel Defendant to produce: (1) documents in response to Plaintiffs' requests for production 2, 3, 6, 7, and 11; (2) deposition witnesses David Standish, Bradley Vatrt, James McQuaid, and Luigi Spadafora; and (3) a Rule 30(b)(6) deposition witness for deposition topics 1-11, 13-27, and 31-35. Docket No. 32. The Court finds the matter properly resolved without oral argument. Local Rule 78-1. For the reasons discussed below, the motion to compel is **GRANTED** in part and **DENIED** in part.

**I.  BACKGROUND**

On September 22, 2017, Plaintiffs filed the instant motion to compel Defendant's responses to various requests for production of documents, produce four witnesses for deposition, and produce a Rule 30(b)(6) deposition witness on various topics. Docket No. 32. Generally, Plaintiffs submit that the

requested documents and the information to be derived from the depositions are relevant to their breach of contract claim. Docket No. 32 at 13-14, 19-20, 22-23. Plaintiffs have filed a motion for leave to file an amended complaint asserting bad faith claims, which is currently pending, and acknowledge that many of their requests would be "even more relevant" if the motion for leave to file an amended complaint is granted. Docket No. 37 at 2; *see also* Docket No. 32 at 20. In response, Defendant generally submits that Plaintiffs' requests are irrelevant to the breach of contract claim, although Defendant concedes that the requests could be relevant to bad faith claims. Docket No. 36-1 at 3, 5, 7. Defendant also submits that certain information is confidential, cumulative, or duplicative to information that has already been provided in documents propounded to Plaintiffs or that will be provided in a Rule 30(b)(6) deposition. *Id.* at 8, Docket No. 36-2 at 1. In reply, Plaintiffs generally submit that Defendant fails to cite to binding case law that Plaintiffs' requests are irrelevant and cumulative. Docket No. 37 at 5.

## II.   STANDARDS

"[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). Parties are entitled to discover non-privileged information that is relevant to any party's claim or defense and is proportional to the needs of the case, including consideration of the importance of the issues at stake in the action, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(1). The most recent amendments to the discovery rules are meant to curb the culture of scorched earth litigation tactics by emphasizing the importance of ensuring that the discovery process "provide[s] parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Roberts v. Clark Cty. School Dist.*, 312 F.R.D. 594, 603-04 (D. Nev. 2016).

When a party fails to provide requested discovery, the requesting party may move to compel that discovery. *See* Fed.R.Civ.P. 37(a). Conversely, a party from whom discovery is sought may move for a protective order. *See* Fed.R.Civ.P. 26(c). For good cause shown, courts may issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

*See id.*; *see also* Fed.R.Civ.P. 26(b)(2)(C) (courts must limit frequency or extent of discovery that is otherwise permissible if that discovery is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive). When a discovery dispute is presented through the filing of a motion to compel and that motion is denied, courts may enter any protective order authorized under Rule 26(c). *See* Fed.R.Civ.P. 37(a)(5)(B).

### III.   REQUESTS FOR PRODUCTION OF DOCUMENTS

   A.   Request for Production 2

   All Documents and Communications relating to the negotiation, underwriting, drafting, issuance, placement and/or renewal of the Illinois National Policy, including but not limited to all Documents and Communications constituting, consisting of or contained in Your underwriting file for the Illinois National Policy, including any IGT application or underwriting submission for or in connection with the Illinois National Policy.

Docket No. 32-4 at 14.

Defendant objected to this request on grounds that is it, *inter alia*, unintelligible, vague, ambiguous, and unduly burdensome. Docket No. 32-5 at 6. Defendant further objected to this request because information regarding the underwriting of Plaintiffs' policy with Defendant does not affect the coverage issues that are raised by Plaintiffs' breach of contract claim and, therefore, is irrelevant. *Id.*

Plaintiffs submit that underwriting information is relevant to their breach of contract claim because it could provide information on the parties' intent when drafting the policy and what requirements Plaintiffs allegedly failed to complete. Docket No. 32 at 14-15. In response, Defendant submits that underwriting information is irrelevant as extrinsic information, and is discoverable only if Plaintiffs had alleged ambiguities in the policy language. Docket No. 36-1 at 3. Defendant, however, fails to cite to any binding case law that underwriting files are irrelevant to a breach of contract claim. *Id.* at 3, 4.

The relevancy of underwriting and policy drafting history information is not exclusive to cases that involve bad faith claims. *See, Renfrow v. Redwood Fire & Cas. Ins. Co.*, 288 F.R.D. 514, 521 (D. Nev. 2013) (finding that underwriting files are relevant to claims of breach of contract and bad faith); *see also Phillips v. Clark Cty. Sch. Dist.*, 2012 U.S. Dist. LEXIS 5309, *11-14 (D. Nev. Jan. 18, 2012); *Olin Corp. v. Cont'l Cas. Co.*, 2011 U.S. Dist. LEXIS 98177, *9-10 (D. Nev. Aug. 30, 2011). In *Phillips*, the Court overruled the defendant's objections to the relevancy of documents related to the

underwriting files and negotiations of the insurance policy at issue without specifying the relevancy only to the bad faith claims. *Philips*, 2012 U.S. Dist. LEXIS 5309, at *33. Underwriting information, as well as policy drafting history, is relevant and, therefore, discoverable in a breach of contract claim because it indicates what the coverage included and also whether the insurer failed to meet its obligation. *Olin*, 2011 U.S. Dist. LEXIS 98177, at *9-10.

In *Olin*, the Court found that underwriting information was relevant to the defendant's affirmative defenses that the insured failed to comply with an applicable policy provision and that the claim at issue fell outside of the insured's policy, even though those affirmatives defenses were conditional. *Id*. In the instant case, Defendant raises similar affirmative defenses: that Plaintiffs failed to provide timely notice that they were involved in litigation, as required by the policy, and their claim was barred by the policy. Docket Nos. 32 at 14, 32-11, 36 at 8.

Accordingly, the Court GRANTS Plaintiffs' motion regarding request for production number 2, and orders Defendant to provide all responsive, non-privileged information requested by December 15, 2017.

B.   Request for Production 3

All Documents and Communications relating to the meaning, purpose, interpretation, application, and scope of the terms, provisions, conditions, and/or exclusions of the Illinois National Policy, including but not limited to:

   a. all Documents and Communications relating to the definitions of "Wrongful Act" in the Illinois National Policy, including the definitions in the BASE section and TECH module of the Policy;
   b. all Documents and Communications relating to the definition of "Claim" in the Policy;

   c. all Documents and Communications relating to the definition of "Professional Services" in the Policy, including the definition in the TECH Module of the Policy;

   d. all Documents and Communications relating to the definition of "Loss" in the Policy;

   e. all Documents and Communications relating to Exclusion (b) in the Policy;

   f. all Documents and Communications relating to Exclusion (o) in the Policy;

   g. all Documents and Communications relating to Exclusion (r) in the Policy; and

   h. all Documents and Communications relating to the Exclusion contained in Endorsement No. 24 of the Illinois National Policy.

Docket No. 32-4 at 14-15.

Defendant objected to this request on grounds that it is ambiguous, vague, and unduly burdensome. Docket No. 32-5 at 7-8. Defendant further objected to this request, *inter alia*, because "the meaning, purpose, interpretation, application, and scope of policy provisions are questions of law." *Id.* at 8.

The parties disagree on the first step required to permit extrinsic evidence to prove the meaning of an ambiguous term or provision. Plaintiffs submit that the meanings of certain terms and provisions are relevant to their breach of contract claim because Defendant's interpretations of certain terms and provisions differ with Plaintiffs' interpretations, giving rise to a conflict over the "reasonable expectations of coverage." Docket Nos. 32 at 14-16, 27 at 19. In response, Defendant submits that extrinsic evidence can be used only to interpret ambiguous terms. Docket No. 36-1 at 3-4. Defendant further submits, without citing binding case law, that Plaintiffs cannot now identify any ambiguities in the policy language in discovery motions when they failed to do so in their complaint. *Id.* at 4. In reply, Plaintiffs submit that extrinsic evidence is relevant even when only "the potential that such evidence may show key policy terms to be ambiguous" exists. Docket No. 37 at 5.

Although Plaintiffs did not identify specific terms or provisions as ambiguous in their complaint, extrinsic evidence is nonetheless relevant even when policy language initially appears unambiguous. *Phillips*, 2012 U.S. Dist. LEXIS 5309, at *12. Plaintiffs interpret this rule on potentially ambiguous terms to mean that a party does not have to identify ambiguities in the policy language in order to request information to clarify policy terms and provisions. The Court agrees. In *Phillips*, the Court overruled the defendant's objections to the relevancy of information relating to the interpretation of the policy terms and exclusions to coverage on grounds that extrinsic evidence may "reveal[] more than one possible meaning to which the language of the contract is susceptible." *Id.* at *12, 35.

Further, Courts "generally decline to decide the issue of ambiguity on a motion to compel production." *Phillips*, 2012 U.S. Dist. LEXIS 5309, at *13. Engaging in this analysis would unnecessarily increase the Court's involvement in the discovery process, especially given the understanding that information within the scope of discovery need not be admissible as evidence to be discoverable. *See* Fed.R.Civ.P. 26(b)(1); *see also Phillips*, 2012 U.S. Dist. LEXIS 5309, at *13;

*Cardoza v. Bloomin' Brands*, 141 F. Supp. 3d 1137, 1144 (D. Nev. 2015) ("discovery is supposed to proceed with minimal involvement of the Court") (quoting *F.D.I.C. v. Butcher*, 116 F.R.D. 196, 203 (E.D. Tenn. 1986)).

Accordingly, the Court GRANTS Plaintiffs' motion regarding request for production number 3, and orders Defendant to provide all responsive, non-privileged information requested by December 15, 2017.

C. Request for Production 6

> All "Claims Manuals," however such manuals are denominated, during the period of 2011 through present day, relating to the handling of claims under general liability, media content, and/or errors & omissions policies issued and/or subscribed and/or underwritten by You.

Docket No. 32-4 at 16.

Defendant objected to this request as irrelevant to Plaintiffs' breach of contract claim. Docket No. 32-5 at 11. Defendant further objected to this request, *inter alia*, because it seeks information containing trade secrets and proprietary information. *Id.*

Plaintiffs submit that claims manuals are relevant to their breach of contract claim because they could provide information as to Plaintiffs' alleged failure to meet requirements for coverage. Docket No. 32 at 14. In response, Defendant submits that claims manuals cannot alter the meaning of unambiguous terms and submits the same arguments it previously raised regarding the use of extrinsic evidence to interpret ambiguous terms. Docket No. 36-1 at 5.

Claims manuals and claims handling information are relevant in breach of contract cases. *See Renfrow*, 288 F.R.D. at 521; *see also Phillips*, 2012 U.S. Dist. LEXIS 5309, at *34 (finding relevant claims bulletins, guidelines, or memorandum relating to claims adjusting, "documents reciting company philosophies and policies regarding claims handling policies," procedural or operational manuals which instruct employees on their responsibilities, and procedures and guidelines for reviewing and determining claims for coverage); *Olin*, 2011 U.S. Dist. LEXIS 98177, at *9-10 (finding relevant "general company-wide manuals, guidelines, [and] claims-handling procedures..."). The Court finds that claims handling manuals or guidelines are relevant even when a claim of bad faith has not been made because such documentation could reveal if Plaintiffs provided insufficient information in seeking

1 coverage under their policy or if general claims handling guidelines are inconsistent with the
2 requirements of Plaintiffs' policy.

3 Accordingly, the Court GRANTS Plaintiffs' motion as it relates to request for production number
4 6, and orders Defendant to provide all responsive, non-privileged information requested by December
5 15, 2017.

D. Request for Production 7

> All "Underwriting Manuals," however such manuals are denominated, used by You during the period of 2011 through present day, relating to the underwriting, drafting, generation, or sale of general liability, media content, and/or errors & omissions policies issued and/or subscribed and/or underwritten by You.

Docket No. 32-4 at 16.

Defendant objected to this request as irrelevant and disproportionate to the subject matter of the litigation. Docket No. 32-5 at 11. Defendant further objected to this request, *inter alia*, because it seeks information containing trade secrets and proprietary information, and because it is unduly burdensome and increases the cost of litigation. *Id.* at 12.

Plaintiffs submit that underwriting manuals are relevant to their breach of contract claims for the same reasons they submit claims manuals are relevant. *See supra*, Section III(C). In response, Defendant objects to the relevancy of underwriting manuals for the same reasons it objects to the relevancy of claims manuals. *Id.*

Where claims manuals are relevant to a breach of contract claim, underwriting manuals are also relevant to that claim. *See Phillips*, 2012 U.S. Dist. LEXIS 5309, at *34 (finding relevant documents on the procedures and guidelines for reviewing and determining underwriting applications for insurance); *see also Olin*, 2011 U.S. Dist. LEXIS 98177, at *9-10 (finding relevant "general company-wide manuals, guidelines...").

Accordingly, the Court grants Plaintiffs' motion as it relates to request for production number 7, and orders Defendant to provide all responsive, non-privileged information requested by December 15, 2017.

E. Request for Production 11

> All Documents and Communications relating to Your investigation, handling, evaluation, assessment and/or adjustment of the SGI Claim, including but not limited to any investigation into SGI, any Documents or Communications with any other insurer(s) of SGI, Global Draw and/or Barcrest, and/or any other third parties, and/or Your decision to deny coverage for the SGI Claim as referenced in Paragraph 11 of Exhibit A, and/or Your decision to defend and/or pay at least a portion of the SGI Claim as referenced in paragraph 15 of Exhibit A, including but not limited to all Documents and Communications constituting, consisting of, or contained in any claim file maintained by You, however any such file is denominated.

Docket No. 32-4 at 16-17.

Defendant objected to this request on the grounds that it is unintelligible, ambiguous, vague, and unduly burdensome. Docket No. 32-5 at 14, 16. Defendant further objected to this request, *inter alia*, as irrelevant because the information concerns a non-party's policy, claim, or lawsuit with Defendant. *Id.* at 14.

Plaintiffs submit that information regarding non-party Scientific Games Inc.'s ("SGI") policy with Defendant and claim is relevant because SGI's policy is "substantially similar" to Plaintiffs' policy with Defendant and SGI's claim under this policy is based on similar facts and events as Plaintiffs' claim. Docket No. 32 at 3. Therefore, Plaintiffs submit, Defendant's handling of SGI's claim could provide better understanding on how Defendant handled Plaintiffs' claims. *Id.* at 23. In response, Defendant submits that how it handled SGI's claim would not change the facts of how it handled Plaintiffs' claim, as each claim was submitted under different policies. Docket No. 36-1 at 6. Defendant further submits that providing information regarding SGI's policy and claim would reveal "commercially sensitive and private insurance and settlement information," and that SGI "may hold valid privileges and confidentiality agreements and may not consent to the production." *Id.* at 8. In reply, Plaintiffs submit that this information is not confidential, as is evidenced by SGI's disclosure of certain documents without expressing concerns of providing confidential information or a commercial advantage to Plaintiffs as SGI's competitor. Docket No. 37 at 11-12. Plaintiffs further submit that SGI's policy is "inextricably tied" to Defendant's handling of Plaintiffs' claim because Defendant provided coverage to SGI under its policy for reasons it should have provided coverage to Plaintiffs. *Id.*

Information regarding other lawsuits and claims under policies that are identical to the policy at issue are discoverable in a breach of contract claim because how those issues were resolved "may

show that identical language has been afforded various interpretations by the insurer." *Phillips*, 2012 U.S. Dist. LEXIS 5309, at *14 (internal citation omitted). The Court imposes limits, however, on the "scope, time frame, or number of other similar claims" or lawsuits about which a party requests information. *Id.* at *15.[1] In the instant case, Plaintiffs ask for such information in regard to only one claim and one policy held by non-party SGI. The *Phillips* Court found that such information is relevant and overruled the defendant's objection that production would be "unduly burdensome" because the defendant failed to provide sufficient details as to the "time, money, and procedures required to produce the requested documents." *Id.* at *38-39. The Court finds that the information requested in request number 7 is relevant and proportionate to the needs of the case.

Accordingly, the Court GRANTS Plaintiffs' motion as it relates to request for production number 7, and orders Defendant to provide all responsive, non-privileged information requested by December 15, 2017.

## IV. FACT WITNESS DEPOSITIONS

### A. David Standish, Bradley Vatrt, James McQuaid

Mr. Standish, Mr. Vatrt, and Mr. McQuaid are all current employees of Defendant's parent company, American International Group, Inc. Docket No. 32 at 5. Mr. Standish worked on Plaintiffs' claim after Defendant denied coverage under Plaintiffs' policy. Docket No. 36-2 at 2. Mr. Vatrt worked on SGI's claims. *Id.* Mr. McQuaid supervised all claim handlers that worked on Plaintiffs' claim. *Id.* Plaintiffs noticed the depositions of Mr. Standish and Mr. Vatrt on June 28, 2017. Docket Nos. 32-7, 32-8. Plaintiffs noticed the deposition of Mr. McQuaid on July 27, 2017. Docket No. 32-9. Plaintiffs submit that these employees' knowledge is relevant as to Defendant's claim handling conduct. Docket No. 32 at 19. In response, Defendant submits that claim handling information from these employees is cumulative and duplicative of the Rule 30(b)(6) deposition and documents it has already produced, is irrelevant as to a breach of contract claim and as to SGI's claim, and that the employees "were not

---

[1] In *Phillips*, the defendant had identified two lawsuits and ten claims as potentially responsive to the plaintiff's requests. *Id.* at 39-42. Although the Court ultimately found the ten claims as unresponsive to the plaintiff's requests, it nonetheless indicated that amount of discovery was not unduly burdensome to produce. *Id.* at 39-40.

9

directly involved in the coverage analysis." Docket No. 36-2 at 1-2. In reply, Plaintiffs submit that irregardless of the degree of the employees' involvement, Plaintiffs have a right to depose the employees to determine the extent of their knowledge of and involvement in handling Plaintiffs' claim. Docket No. 37 at 8-9.

The Court has found that claims handling information is relevant in a breach of contract claim. *See supra*, Section III(C). Moreover, Defendant has already produced certain claim files, therefore conceding to its relevance. Docket No. 36-2 at 1. The Court has also previously found that information regarding other lawsuits and claims under policies that are identical to the policy at issue are discoverable in a breach of contract claim. *See supra*, Section III(D).

Additionally, courts have rejected the argument that a Rule 30(b)(6) deposition and a percipient witness deposition are unnecessary or cumulative of one another based simply on the similarity of topics covered. *See, e.g.*, *Louisiana Pac. Corp. v. Money Market 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 487 (N.D. Cal. 2012) (collecting cases). Indeed, courts have permitted the deposition testimony of even high-ranking corporate officers with unique insight or personal involvement in the events at issue that cannot be discovered through less intrusive means, notwithstanding Rule 30(b)(6) testimony on those issues. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 264-65 (N.D. Cal. 2012) (rejecting argument that Samsung's CEO could not be deposed as a percipient witness given Rule 30(b)(6) designee's testimony on the same subject matter). In determining whether to permit both a Rule 30(b)(6) deposition and a percipient witness deposition on overlapping issues, the court must ensure that there is sufficient utility in the percipient witness deposition such that it is not unnecessary or wasteful. *Cf. Roberts*, 312 F.R.D. at 603-04.

In the instant case, certain deposition topics and the information to be derived from Mr. Standish, Mr. Vatrt, and Mr. McQuaid overlap. *See* deposition topics number 5-6, 11, 13-15, 18-27, and 31-32, Docket Nos. 32-6 at 9-14, 32 at 9-11. However, because Mr. Standish, Mr. Vatrt, and Mr. McQuaid worked on matters relevant to Plaintiffs' discovery requests, the Court finds that there is sufficient utility in their depositions, such that the depositions are not unnecessary nor cumulative, especially considering that a Rule 30(b)(6) deposition has yet to occur.

Accordingly, the Court GRANTS Plaintiffs' motion as it relates to the depositions of Mr. Standish, Mr. Vatrt, and Mr. McQuaid, and orders Defendant to produce the witnesses for depositions by January 15, 2018.

B.  Luigi Spadafora

On June 28, 2017, Plaintiffs noticed the deposition of Mr. Spadafora. Docket No. 32-10. Defendant objected to Mr. Spadafora's deposition as irrelevant and "protected either as work product or as an attorney-client privileged communication." Docket No. 32-3 at 17. Plaintiffs submit that neither the work product doctrine nor attorney-client privilege can prevent Mr. Spadafora from providing deposition testimony because, although he is an attorney, he served Defendant in his capacity as a claims handler, not as counsel. Docket No. 32 at 21. Plaintiffs submit that the factors provided in *Couturier v. Am. Invsco Corp.* (as adopted from the Eight Circuit case *Shelton v. Am. Motors Corp.*), which determine whether a party may depose opposing counsel, are inapplicable because Mr. Spadafora did not serve as counsel for Defendant but, instead, performed "a business function of claims handler" as is exhibited by his letter sent to Plaintiffs' counsel.[2] *Id.*; *see also Couturier v. Am. Invsco Corp.*, 2013 U.S. Dist. LEXIS 118001, at *4 (D. Nev. Aug. 20, 2013) (adopting the factors as set in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)).

In response, Defendant submits that Mr. Spadafora "was retained to provide legal advice" as "outside coverage counsel." Docket No. 36-2 at 3, 5. Defendant does not contend that Mr. Spadafora did not also serve in a business function but rather cites to non-binding case law that "an attorney's investigation is protected if such tasks are related to the rendition of legal services." *Id.* at 5. Defendant further submits that Mr. Spadafora is not an employee of Defendant and, therefore, Defendant "cannot control" his presence at a deposition. *Id.* In reply, Plaintiffs submit that they are entitled to determine, through a deposition, Mr. Spadafora's role in handling Plaintiffs' claim. Docket No. 37 at 9.

Defendant submits that Mr. Spadafora is not its employee and that it does not exercise control over him. Docket No. 36-2 at 5. Therefore, Defendant does not have standing to object to the

---

[2] Plaintiffs use the letter sent by Mr. Spadafora to Plaintiffs' counsel to identify his role in the matter which consisted of reviewing information from Plaintiffs in opposition to Defendant's coverage determination. Docket No. 32-11 at 2.

11

deposition of a non-party witness. The Court discussed at length Defendant's lack of standing in objecting to the depositions of non-party witnesses in its order on Defendant's motion for protective order. Docket No. 45. The Court will not repeat its previous analysis here but will provide a brief recapitulation of its findings.

Fed.R.Civ.P. 26(c) permits a party or non-party from whom discovery is sought to file a motion for a protective order. Plaintiffs do not seek documents in possession of Defendant nor do they seek any other discovery from Defendant through Mr. Spadafora's deposition. Therefore, the Court finds that Defendant does not have standing to object to Mr. Spadafora's deposition. Moreover, the proper motion in objecting to a non-party deposition is a motion to quash, filed by the non-party, in "the court for the district where compliance is required." Fed.R.Civ.P. 45(d)(3). Although the record does not show that Plaintiffs have subpoenaed Mr. Spadafora, the deposition notice indicates that the deposition is set to take place in Chicago, IL. Docket No. 32-10. Accordingly, the Court further finds that it does not have jurisdiction to compel the deposition of a non-party witness, nor would it have jurisdiction over a motion to quash a subpoena where compliance is required outside of the District of Nevada.[3]

## V. RULE 30(b)(6) DEPOSITION TOPICS

Plaintiffs' Rule 30(b)(6) deposition notice includes 35 topics of examination.[4] Docket No. 32-6. Although Defendant objected to Plaintiffs' Rule 30(b)(6) deposition topics in its letter to Plaintiffs' counsel on August 22, 2017, Defendant's response in opposition to Plaintiffs' motion to compel fails to adequately address Defendant's objections to each deposition topic, and meaningfully addresses only topic numbers 27 and 35. Docket No. 32-3. *Cf. Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013) (courts only address arguments that are meaningfully developed). Additionally, "[t]he party resisting discovery bears the burden of showing why a discovery request should be denied" by specifying in detail, as opposed to general and boilerplate objections, why "each request is

---

[3] The Court therefore does not reach the issue of whether Mr. Spadafora's deposition is either relevant or protected as privileged.

[4] Exhibit A of Plaintiffs' 30(b)(6) deposition notice includes the topics of examination. Docket No. 32-6. However, beginning on page 12, Plaintiffs incorrectly numbered the topics of examination by re-starting at number 23, as opposed to continuing to number 25. *Id.* at 12-13.

irrelevant." *FTC v. AMG Servs.*, 291 F.R.D. 544, 553 (D. Nev. 2013) (internal citation omitted). Therefore, without any meaningfully developed argument articulating, in detail, why specific deposition topics should be denied as irrelevant, the Court does not address deposition topics 1-11, 13-26, nor 31-34.

Deposition topic number 27 requests information regarding the factual bases for Defendant's affirmative defenses. Docket Nos. 32-6 at 12 (incorrectly labeled as topic number 25), 32 at 11 (correctly labeled as topic number 27). Plaintiffs submit that claims handling information is relevant where affirmative defenses allege that coverage is barred because of terms and exclusions in a policy or because of the insured's failure to perform obligations under a policy. Docket No. 32 at 20. In response, Defendant submits that information about its affirmative defenses is irrelevant "to any claim or defense that has been asserted by any party," while simultaneously submitting it is willing to provide a Rule 30(b)(6) deposition witness to testify as to the facts supporting Defendant's position that Plaintiffs' policy does not provide coverage. Docket No. 36-2 at 6. Defendant acknowledges that the facts supporting its position that Plaintiffs' policy does not provide coverage "are the same facts that support its fact-based defenses in this action." *Id.* Therefore, the Court finds that Defendant does not, in fact, meaningfully object to deposition topic number 27. Accordingly, the Court GRANTS Plaintiffs' motion as it relates to deposition topic number 27.

Deposition topic number 35 requests information regarding the termination of Daniel Godsill's employment by Defendant's parent company, American International Group, Inc., and "the disposition of" any files pertaining to his work on Plaintiffs' claim. Docket Nos. 32-6 at 13 (incorrectly labeled as topic number 33), 32 at 12 (correctly labeled as topic number 35). Plaintiffs submit that this information is relevant because it relates to claims handling information in connection with Defendant's affirmative defenses. Docket No. 32 at 20. In response, Defendant submits that disclosure of personnel files is irrelevant and goes against public policy. Docket No. 36-2 at 6.

Information of a claim handler's qualifications, training, and any disciplinary actions taken as a result of claim handling is relevant only in cases with bad faith claims. *See McCall v. State Farm Mut. Auto. Ins. Co.*, 2017 U.S. Dist. LEXIS 117250, at *28-29 (D. Nev. July 26, 2017). As the instant case

does not include bad faith claims, the information is irrelevant. Therefore, the Court DENIES Plaintiffs' motion as it relates to deposition topic number 35.

## VI. CONCLUSION

For the reasons discussed above, the Court hereby **GRANTS** in part and **DENIES** in part Plaintiffs' motion to compel production of documents and deposition testimony. Docket No. 32. The Court **ORDERS** Defendant to produce documents in response to Plaintiffs' requests for production 2, 3, 6, 7, and 11, by December 15, 2017. The Court **FURTHER ORDERS** Defendant to produce David Standish, Bradley Vatrt, and James McQuaid for depositions by January 15, 2018. The Court finds that Defendant does not have standing to object to the non-party deposition of Luigi Spadafora and that the Court does not have jurisdiction over a motion to quash a deposition occurring outside the District of Nevada. The Court **FURTHER GRANTS** Plaintiffs' motion to compel regarding topic number 27 in their Rule 30(b)(6) deposition notice and **DENIES** Plaintiffs' motion as it relates to deposition topic number 35. The parties shall schedule and hold a Rule 30(b)(6) deposition no later than December 15, 2017.

IT IS SO ORDERED.

DATED: November 16, 2017

_____
NANCY J. KOPPE
United States Magistrate Judge